## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

THE ROSE CLUB COMPANY, LTD.
and RASHNA CUSSEN,

        **Plaintiff,**

**v.**

KENNEDY FUNDING FINANCIAL, LLC,
A New Jersey limited liability company,

        **Defendant.**

Case No.:

**COMPLAINT AND JURY
DEMAND**

## COMPLAINT

Plaintiffs, THE ROSE CLUB COMPANY LTD. and RASHNA CUSSEN, by and through undersigned counsel, hereby files this Complaint against Defendant, KENNEDY FUNDING FINANCIAL, LLC and in support thereof, states as follows:

### JURISDICTION

1. This is an action for damages in excess of this Court's jurisdictional minimum, $75,000 exclusive of costs, interest, and attorneys' fees.

2. Jurisdiction in this Court is proper as there is complete diversity of citizenship in accordance with 28 U.S.A. §1331.

### PARTIES

3. Plaintiff, The Rose Club Company, Ltd., (hereinafter, "Rose") is a company organized and existing under the laws of Nassau, Bahamas and is otherwise *sui juris.*

4.  Plaintiff, Rashna Cussen, (hereinafter "Cussen") is a resident of Nassau, Bahamas and is *sui juris.*

5.  Defendant, Kennedy Funding Financial, LLC (hereinafter, "Kennedy"), a New Jersey corporation, is *sui juris.*

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

6.  Plaintiffs and Kennedy had business dealings resulting in Plaintiffs and Kennedy entering into a loan commitment contract. Rose was the borrower under the loan commitment and Cussen was the guarantor. The contract is attached hereto as Exhibit 1.

7.  The loan commitment fee charged by Kennedy was $1,750,000.00 payable $350,000.00 upon signing of the loan commitment and $1,400,000.00 to be paid at closing from the loan proceeds or upon borrower electing not to proceed to a loan closing.

8.  Prior to entering into Exhibit 1, Kennedy falsely represented that it would loan Rose $35,000,000.00 for constructing a project located on approximately 230 acres of the western end of Rose Island, Bahamas provided that the property appraised for $70,000,000.00 based upon the "as is" market value of the real estate collateral in its present condition.

9.  The "as is" market value of the property easily exceeded $70,000,000.00 because the property had substantial improvements and entitlements. The substantial improvements included miles of seawall creating multiple canals and a marina basin. The cost to build the canals and marina basin exceeded

$40,000,000.00. The entitlements included Bahamian Government approval as a mixed-use resort development zoned with approved master development plan together with approval for hotels and concessions under the Hotels Encouragement Act, a registered homeowners association, subdivided lots, approval for a 363 boat slip full-service marina with vessel servicing and fueling rights, ownership of the seabed, utility easements, ownership of beach into water rights and power cable to Rose Island. The Bahamian Government values the 230 acres at over $120,000,000.00.

10.    Contrary to what was provided for in the loan commitment agreement, an appraisal based on "as is" condition, Kennedy instructed the appraiser it chose to appraise the property as if it were raw land with no improvements or entitlements.

11.    Plaintiffs complained to Kennedy about the appraisal and Kennedy agreed to have its appraiser revise its appraisal. However, Kennedy instructed the appraiser to do the same thing that it orally instructed it to do the first time: appraise the property as raw land with no improvements and no entitlements.

12.    Plaintiffs spoke to the appraiser and were advised by the appraiser that contrary to what was contained in the loan commitment, Kennedy verbally instructed the appraiser to appraise the property as raw land.

13.    As a result, the property appraised for $35,000,000.00 and Kennedy offered to loan $17,000,000.00.

14.    Plaintiffs have demanded a return of its loan commitment fee of $350,000.00 which Kennedy has failed and refused to return.

15.    Plaintiffs have also demanded that Kennedy acknowledge that Plaintiffs are not required to pay the remaining loan commitment fee of $1,400,000.00 due to Kennedy's breach of contract and fraudulent conduct.

16.    The contract specifically provides that, "if lender is unable to perform its obligations under the terms of this loan commitment for whatever reason, lender shall only be obligated to refund the paid portion of the commitment fee. In such event said refund shall occur within three (3) business days."

17.    All conditions precedent to the filing of this action have been performed, complied with, or otherwise waived.

## COUNT I
### Fraud in the Inducement

18.    Plaintiffs repeat and reallege paragraphs 1 through 17 as specifically set forth herein.

19.    During the negotiation of the lending agreement, Kennedy made a material misrepresentation of the presently existing fact that it would have an appraisal conducted based upon the "as is" value of the 230 acre parcel including its improvements and entitlements.

20.    Kennedy knew at the time that it made the representation that the property would be appraised in its "as is" state which would include its improvements and entitlements. Its representation was false as it was Kennedy's intention to have the property appraised for the lowest possible value.

21. Kennedy intended to have plaintiffs rely upon its false material misrepresentation.

22. Plaintiffs reasonably relied upon Kennedy's material misrepresentation that it would have an appraisal conducted based upon the "as is" value of the 238 parcel which as is value would include its improvements and entitlements.

23. As a result of Kennedy's fraudulent misrepresentation, plaintiffs have been damaged in the amount of the loan commitment fee paid and appraisal fees.

WHEREFORE, Plaintiffs demand judgment against Kennedy for consequential damages, prejudgment interest thereon, together with costs of this action and such other and further relief as this court deems appropriate.

## COUNT II
### Breach of Contract

24. Plaintiffs repeat and reallege paragraphs 1 through 17 and Count I of the Complaint as if fully set forth herein.

25. Plaintiffs and defendant entered into Exhibit 1 which agreement required defendant to appraise the property in its "as is" condition.

26. Plaintiff did what the contract required plaintiff to do including making payment of the required loan commitment fee in the amount of $350,000.00.

27. Defendant did not do what the contract required it to do. Specifically, defendant advised the appraiser to appraise the land as raw land without its improvements and entitlements in breach of the contract.

28. Defendant's breach of the contract caused a loss to plaintiff in the amount of the loan commitment fee paid and future loan commitment fee required pursuant to the contract.

WHEREFORE, Plaintiffs demand judgment against Defendant for return of the loan commitment fee paid and cancellation of the remaining loan commitment fee but allegedly due under the contract, together with prejudgment interest thereon, costs of this action, and such other and further relief as this Court deems appropriate.

## COUNT III

### Breach of Implied Covenant of Good Faith and Fair Dealing, Sons of Thunder, Inc. v Borden, Inc. 148 N.J. 396 (1997)

29. Plaintiffs repeat and reallege paragraphs 1 through 17 and Counts I and II of the Complaint as if fully set forth herein.

30. The contract between Plaintiffs and Defendant contains an implied covenant of good faith and fair dealing which means that Defendant had to deal honestly in fact in the conduct of the transaction concerned.

31. Defendant's conduct as set forth above has had the effect of destroying or injuring the rights of Plaintiffs by depriving them of the contemplated loan proceeds. Moreover, the fee charged for the small amount of loan ultimately offered is unreasonable.

32. As Defendant solicited the business of Plaintiffs and accepted payments in the form of loan origination fees, Defendant has acted in bad faith and outside the true understating and/or implied meaning of the contract.

WHEREFORE Plaintiffs, individually, and on behalf of others similarly situated, respectfully request the Court enter judgment in its favor and against Defendant.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues.

**RUSSELL MACNOW**
**ATTORNEY AT LAW, LLC**

Dated: September 19, 2019

_____
RUSSELL MACNOW, ESQ.
265 Rt. 34, Suite E
Colts Neck, New Jersey 07722
(732) 780-0040
NJ Bar No.: 020571993
rm@macnowlaw.com
Attorney for Plaintiffs

## DESIGNATION OF TRIAL COUNSEL

Pursuant to the provisions of R.4:25-4, the court is advised Russell Macnow, Esq. is hereby designated as trial counsel.

**RUSSELL MACNOW**
**ATTORNEY AT LAW, LLC**

Dated: September 19, 2019

_____
RUSSELL MACNOW, ESQ.
265 Rt. 34, Suite E
Colts Neck, New Jersey 07722
(732) 780-0040
NJ Bar No.: 020571993
rm@macnowlaw.com
Attorney for Plaintiffs

## CERTIFICATION OF NO ACTION PENDING

I certify pursuant to R.4:5-1(b)(2) that the matter in controversy is not the subject of any other action or arbitration proceeding, nor are they contemplated, and that to the best of my knowledge and information, no other parties should be joined in this action.

RUSSELL MACNOW
ATTORNEY AT LAW, LLC

Dated: September 19, 2019

RUSSELL MACNOW, ESQ.
265 Rt. 34, Suite E
Colts Neck, New Jersey 07722
(732) 780-0040
NJ Bar No.: 020571993
rm@macnowlaw.com
Attorney for Plaintiffs

EXHIBIT 1

EXH. 1



**KENNEDY FUNDING**
F I N A N C I A L

March 29, 2019

17 West Street, Box N-7950
Nassau, Bahamas
Attn:   Ms. Rashna Cussen

Re:   **Financing Request $35,000,000 – Any and all reference to currency in this document shall mean U.S. Dollars only.**

Dear Ms. Cussen:

We are pleased to advise you of our commitment to provide financing. This Loan Commitment ("Loan Commitment") supersedes all previous communications and correspondence without limitation. The terms of this Loan Commitment are as follows:

| | |
|---|---|
| **LENDER:** | Kennedy Funding Financial, LLC (KFF), or any other Lender designated by KFF ("hereinafter collectively referred to as Lender"), intends to form a limited liability company just prior to closing comprised of its private funding sources to fund and act as Lender for the Loan ("Loan") described hereunder. |

**BORROWER:**   The Rose Club Company Ltd.          Bahamian Co. No: 64385C
17 West Street North, Box N-7950
Nassau, Bahamas

**GUARANTOR:**   Rashna Cussen
c/o Davis & Co.,
17 West Street North, Box N-7950
Nassau, Bahamas

Any and all other entities or individuals that: (i) have a Ten Percent (10%) or greater direct or indirect interest in, or (ii) manage, Borrower or Guarantor.

Notwithstanding anything herein to the contrary, the obligation of the Guarantor shall be released provided the Borrower and/or Guarantor, their agents, servants and/or employees:

(i) absent Force Majeure, take no action to hinder, frustrate or delay the Lender in its efforts to enforce any right to collect the outstanding obligation from any of the property pledged as Collateral for this Loan; and

(ii) absent Force Majeure provide a deed in lieu of foreclosure at the request of Lender, with the real estate taxes paid current, no other liens on the property, and no environmental issues on the Collateral.

For the purposes of this Paragraph, Force Majeure shall be defined as an Act of God, Riot, Strike or other condition or occurrence outside the control of Borrower, including Government Interference, and/or Government shutdown which materially impacts Borrower's ability to perform under the Loan



2

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

Agreement, Mortgage and other ancillary Final Loan Documents. In the event of Force Majeure, Borrower's time to cure shall be extended for a reasonable time after the event of Force Majeure is over, however in no case shall said reasonable time to cure be less than thirty (30) days.

**COLLATERAL/**
**PROJECT:**     Lender shall receive a First Lien on the Real Estate Collateral ("Collateral"), as described in Schedule "C".

**FINANCING**
**REQUEST:**     A Maximum Loan of Thirty Five Million Dollars ($35,000,000). An estimate of fees and costs, excluding legal, is set forth on Schedule "A" attached. Loan proceeds remaining, if any, after land acquisition and closing, (including legal fees, closing costs and interest reserve) set forth in Schedule "A" can be utilized by Borrower in its sole discretion.

**TERMS:**     The term of the Loan shall be three (3) years from the date of closing. The closing shall take place no later than the later of:

(i)     July 30, 2019, time of the essence;
(ii)     Twenty (20) days, time of the essence, following Lender approval from The Bahamian Investment Agency ("BIA") and/or The Bahamian Central Bank or other appropriate authority as deemed necessary by Lender's local legal counsel, subject to Borrower either accepting the Loan Offer or the Third Party Loan Offer within three (3) business days of receipt of such.

Lender agrees to use its best efforts to submit its application for Lender approval from BIA and/or the Bahamian Central Bank or other appropriate authority as deemed necessary by Lender's local legal counsel no more than ten (10) days following Borrower's acceptance of the Loan Offer or the Third Party Loan Offer set forth in the "Acceptance of Commitment" section infra, with evidence of such application being provided to Borrower upon Borrower's request of such.

The time of the essence date was included at the insistence of Borrower who has represented that it will be in a position to meet all requirements contained herein by said date.

Notwithstanding anything to the contrary above, in the event Borrower requires additional time to close, Borrower may extend the expiration date of the Loan Commitment until August 30, 2019, time of the essence, upon written notice to Lender no later than July 30, 2019, time of the essence, at no additional charge.

tn\com\Rose.Cussen.Executed

3

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

Notwithstanding anything to the contrary above, in the event Borrower requires additional time to close, Borrower may extend the expiration date of the Loan Commitment until September 30, 2019, time of the essence, upon written notice to Lender and payment of Three Hundred Fifty Thousand Dollars ($350,000) no later than August 30, 2019, time of the essence ("Extension Fee").

All interest, points, fees, charges, etc. to be paid to Lender under the Loan Documents shall be paid net of any and all applicable taxes, tariffs, levies, etc. incurred as a result of the Loan being secured by Collateral situated outside of the United States of America. Borrower is responsible for any such charges in addition to the agreed upon amounts due.

**INTEREST:**
A. The interest rate for the first year of the Loan shall be Twelve Percent (12%) per annum paid monthly at One Percent (1%) per month.

B. The interest rate for the second and third year of the Loan shall be Fifteen Percent (15%) per annum paid monthly at One and One Quarter Percent (1 1/4%) per month.

C. Monthly payments of interest only on the unpaid balance shall be due to Lender on the first day of each month for the prior month's interest until the maturity date, at which time the entire balance of principal and accrued and unpaid interest thereon shall be due and payable in full.

D. Monthly payments will be computed on a 30 day month and a 360 day year.

E. Interest from the date of closing to the end of the month in which the closing takes place shall be paid to Lender from the Loan proceeds at closing ("Short Interest").

**REPAYMENT:**
The Loan may be prepaid in full or in part without penalty except there shall be no refund of any fees or costs including, but not limited to, commitment fee, legal fees, extension fees, and costs.

**LEGAL MATTERS:**
The interests of Borrower and Lender are or may be different and may conflict, and Lender's attorney represents only Lender and not Borrower and Borrower is, therefore, advised and required to employ an attorney of Borrower's choice licensed to practice in the State of New Jersey to represent the interests of Borrower.

Borrower shall be required to pay to Lender's attorney, reasonable legal fees and expenses of Lender's attorneys which shall not exceed One Hundred Thousand Dollars ($100,000), in the aggregate without prior approval of Borrower for

tn\com\Rose.Cussen.Executed

4

The Rose Club Company Ltd,
Loan Commitment
March 29, 2019

services provided to Lender in connection with this transaction. Lender herein agrees that its attorneys' fees shall be reasonable. See "OTHER" Section, infra, for payment terms of Lenders' attorney fees.

DOCUMENTATION: Lender's commitment to provide the Loan is subject to the negotiation, execution and delivery of definitive loan and security agreements, mortgages or deeds of trust, notes, and other documentation and customary certificates and legal opinions (collectively, the "Loan Documents"), which in each case will be in form, substance and enforceability reasonably satisfactory to Lender in its sole discretion. The Loan Documents shall contain conditions precedent, representations and warranties, covenants, events of default and other terms and conditions consistent with the terms hereof as shall be reasonably satisfactory to Lender in its sole reasonable discretion and deemed appropriate by Lender for a transaction of the type contemplated herein. All communications directed to Lender, its agents, attorneys, vendors, and or employees shall be in English and Borrower is required to provide Lender with certified English translations of all foreign language documents and/or instruments.

Lender acknowledges that the Loan is for the acquisition of the Collateral and the exit strategy, or lack thereof, shall not be cause for Lender to deny the Loan.

ACCEPTANCE
OF COMMITMENT: This Loan Commitment and all of its terms and conditions will become effective only upon delivery to this office of a signed copy of this Loan Commitment, duly accepted by Borrower, accompanied with a commitment fee in the amount of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000), as modified under "Commitment Fee Modification." which is non-refundable and earned for, among other things, the commitment to provide funds ("Commitment Fee").

Said fee is not refundable under any circumstances, except as agreed to herein.

Notwithstanding anything to the contrary contained in this Loan Commitment, Borrower agrees that the basis for the Loan is the "as is" market value of the real estate Collateral in its present condition. Market value is defined as a twelve (12) month sale to a cash buyer. Borrower understands that Lender will inspect the Collateral by engaging an internationally recognized appraisal firm with Bahamian experience which will determine the "as is" market value. Lender will advance the cost of the appraisal fee. Upon making a determination of value, Lender will deliver to Borrower a copy of the appraisal as well as a loan offer equal to Fifty Percent (50%) of the "as is" market value not to exceed the Financing Request within thirty (30) days of the execution of the Loan Commitment ("Loan Offer") or within three (3) days of Lender's receipt of the appraisal, whichever occurs first. Failure by Borrower to either accept or reject in writing the Loan Offer within three (3) days of receipt shall be deemed to be a rejection of the Loan Offer. Acceptance by Borrower of the Loan Offer shall

tn\com\Rose.Cussen.Executed

5

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

constitute a waiver of the right to engage the services of a third party appraiser as described herein. Borrower understands that Lender cannot and will not lend more than Fifty Percent (50%) of the "as is" market value of the real estate Collateral. If Lender's determination of the value of the Collateral is disputed by Borrower, Borrower may reject the Loan Offer and elect to engage the services of a third party appraiser. If Borrower makes this election, Borrower and Lender shall mutually agree on a third party MAI appraiser. In order to do so, the parties have agreed that Borrower shall provide a list of five (5) MAI appraisers each from a different firm, acceptable to Borrower, that have had no prior contact with Borrower or the Collateral. Lender shall then approve one of them. The appraiser shall be contracted by Lender, and any fees for said appraiser to be reimbursed to Lender by Borrower prior to the appraisal being performed. Upon receipt of the determination of value by the third party appraiser, Lender will, at its option, either offer a Loan (not to exceed in any event the Financing Request) of Fifty Percent (50%) of the "as is" market value of the real estate Collateral as determined by said appraiser ("Third Party Loan Offer") or return the paid portion of the Commitment Fee.

If the Collateral is determined to have a value which would require Lender to make a Loan of Three Million Dollars ($3,000,000) or less, Lender will not be obligated to make the Loan unless Borrower provides additional Collateral acceptable to Lender in its sole discretion to increase the amount of this Loan to at least Three Million Dollars ($3,000,000). If the Loan amount is not increased, the Commitment Fee will be earned by Lender.

This Loan Commitment will become effective once signed by all parties and returned with the Commitment Fee. This Loan Commitment will expire July 30, 2019, as delineated in the "TERMS" section, supra, time of the essence. Lender shall have no obligation with respect to the Loan unless and until this Loan Commitment is fully executed and received by Lender along with the Commitment Fee.

**RETURN OF
COMMITMENT FEE:**

If Lender is unable to perform its obligations under the terms of this Loan Commitment for whatever reason, Lender shall only be obligated to refund the paid portion of the Commitment Fee. In such event, said refund shall occur within three (3) business days. SAID REFUND SHALL BE THE TOTAL EXTENT OF ANY LIABILITY OR OBLIGATION ON THE PART OF LENDER UNDER ANY CIRCUMSTANCE. There will be no refund if Borrower has not complied with all the conditions of this Loan Commitment.

Notwithstanding anything to the contrary contained herein to the contrary, in the event Borrower accepts either the Loan Offer or the Third Party Loan Offer

tn\com\Rose.Cussen.Executed



6

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

pursuant to the terms contained herein, and Borrower complies with all conditions contained herein, and Lender subsequently is not approved by either the BIA, the Bahamian Central Bank or any other authority deemed necessary by Lender's local legal counsel, Borrower shall be entitled to a full refund of the paid portion of the Commitment Fee with no further unpaid Commitment Fee due Lender.

**OTHER:**    Borrower agrees upon acceptance of the Loan Offer to forward an additional Fifteen Thousand Dollars ($15,000) to Lender which Lender will forward to its legal counsel on account of legal fees and costs. Borrower agrees to replenish the retainer upon request by Lender if and when such retainer is depleted.

The Parties herein agree that as a condition precedent to closing, Borrower shall deliver to Lender an Environmental Impact Assessment Report (EIA) or update to previous EIA no more than six (6) months old together with written confirmation that said EIA has been accepted by The Bahamian Environment Science and Technology Commission (BEST COMMISSION) no later than thirty (30) days prior to closing.

Borrower shall be notified of any diligence questions/deficiencies and shall have until fifteen (15) days before the closing or extended closing date as the case may be, to cure said deficiencies to the reasonable satisfaction of the Lender.

**EXPENSES:**    Borrower agrees that the Loan shall be without cost to Lender. Borrower assumes liability for and will pay all costs and expenses required to satisfy the conditions hereof and the making of the Loan. Such costs and expenses shall be paid at or prior to the Loan closing, or upon demand if the Loan does not close or if this Loan Commitment is terminated. Such obligation shall survive termination.

**RELEASES:**    During the term of the Loan, provided all payments of principal and interest on the Loan shall be current on the date of the sale and at the time of the sale and there are no uncured defaults or events of uncured defaults under the Loan Documents, Borrower may sell for cash individual parcels of the Collateral. Lender agrees to release such sold parcels provided that Lender receives the Release Price for such parcel which will be applied to the outstanding balance. The Release price will be the greater of:

(i)    80% of the net sale price of the parcel taking into account reasonable and customary closing adjustments and customary sales commissions;

(ii)    75% of the gross sale price of the parcel;

tn\com\Rose.Cussen.Executed



7

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

(iii)    the minimum release amount as agreed to on a schedule to be approved by Lender prior to closing.

(The greater of the above three amounts being the "Release Price".)

**GOVERNING LAW, ETC.**    This Loan Commitment may be executed in counterparts which, taken together, shall constitute one original. This Loan Commitment is for the benefit of Borrower only and may not be assigned except upon the prior written consent of Lender, which consent may be withheld for any reason or no reason. No party other than Borrower or a permitted assignee may rely upon the terms and conditions of this Loan Commitment. This Loan Commitment will be governed by and construed in accordance with the laws of the State of New Jersey without regard to the principles of conflicts of laws thereof. See Paragraph 13, Schedule "B" for Governing Law for the final Loan Documents.

**WAIVER:**    No failure on the part of Lender to exercise and no delay in exercising any rights under the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right under the Loan Documents preclude any further exercise thereof, or the exercise of any other right. Each and every right or remedy granted under the Loan Documents or under any document delivered thereunder or in connection therewith or allowed to Lender in law or equity shall be deemed cumulative and may be exercised from time to time.

This Loan Commitment is executed by an individual strictly in his capacity as a representative of Lender. By the acceptance of this Loan Commitment, Borrower agrees that no representative, member, partner, shareholder, employee or agent of Lender shall be personally liable for the payment of any claim or the performance of any obligations hereunder.

**LIMITATION OF DAMAGES:**    LENDER SHALL HAVE NO LIABILITY TO BORROWER, OR ANY OTHER ENTITY OR PERSON, UNDER ANY THEORY OF LAW OR EQUITY FOR ANY AMOUNT IN EXCESS OF THE PAID PORTION OF THE COMMITMENT FEE. BORROWER ACKNOWLEDGES THAT THIS LIMITATION OF DAMAGES CLAUSE IS REASONABLE. BORROWER AGREES NOT TO PURSUE ANY CLAIM IN EXCESS OF THE ABOVE SUM.

**WAIVER OF TRIAL BY JURY:**    BORROWER AND LENDER EACH HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY

tn\com\Rose.Cussen.Executed



8

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

JURY IN ANY SUIT, COUNTERCLAIM, OR CROSS-CLAIM ARISING IN CONNECTION WITH, OUT OF, OR OTHERWISE RELATING TO THIS LOAN COMMITMENT, THE OTHER LOAN DOCUMENTS, THE OBLIGATION, THE COLLATERAL, OR ANY RELATED TRANSACTION.

MISCELLANEOUS: BORROWER UNDERSTANDS THAT LENDER CANNOT AND WOULD NOT ENTER INTO THIS LOAN COMMITMENT WITHOUT BORROWER'S AGREEMENT TO THE LIMITATION OF DAMAGES, CHOICE OF FORUM AND WAIVER OF TRIAL BY JURY CLAUSES CONTAINED HEREIN.

BORROWER AND GUARANTOR(S) UNDERSTAND THAT THEY ARE OBLIGATED TO DISCLOSE TO LENDER THE NAME AND ADDRESS OF ANY THIRD PARTY WHO IS PROVIDING A PORTION OR ALL OF THE COMMITMENT FEE ("THIRD PARTY FEE PROVIDER"). IN THE EVENT THERE IS A THIRD PARTY FEE PROVIDER, THE THIRD PARTY FEE PROVIDER SHALL BE REQUIRED TO SIGN THIS LOAN COMMITMENT. IN THE EVENT THAT BORROWER FAILS TO MAKE SUCH DISCLOSURE, BORROWER AND GUARANTOR(S) AGREE TO INDEMNIFY AND HOLD HARMLESS LENDER AGAINST ANY AND ALL CLAIMS ASSERTED BY SUCH UNDISCLOSED PARTY AS WELL AS ANY ATTORNEYS' FEES INCURRED IN DEFENDING AGAINST SAME.

COMMITMENT FEE
MODIFICATION: Notwithstanding the above requirement to pay the Commitment Fee at the signing of this Loan Commitment, as consideration for the parties unconditionally and irrevocably waiving all right to trial by jury and the parties agreeing to the Choice of Forum and Limitation of Damages clauses, Lender will accept payment of the One Million Seven Hundred Fifty Thousand Dollars ($1,750,000) Commitment Fee in the following manner:

a) Three Hundred Fifty Thousand Dollars ($350,000) to be paid at the time this Loan Commitment is signed, prior to Lender's due diligence, which signing will be no later than March 29, 2019, time of the essence;

b) One Million Four Hundred Thousand Dollars ($1,400,000) to be paid at the closing from the Loan proceeds or upon Borrower electing not to proceed to a Loan closing. In addition, any default by Borrower under this Loan Commitment, or other failure of Borrower to comply with this Loan Commitment, or misrepresentation by

tn\com\Rose.Cussen.Executed



9

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

Borrower of any fact or state of facts to Lender either in connection with this Loan Commitment or otherwise, or any material adverse change of any type shall not relieve Borrower of its obligation to pay such amount to Lender.

Notwithstanding the above, in the event the Loan Offer provides a Loan amount of less than Thirty Five Million Dollars ($35,000,000) and Borrower accepts same and closes, at closing the amount due in b) above will be reduced to Five Percent (5%) of the Loan amount less the Three Hundred Fifty Thousand Dollars ($350,000) paid in "a" above. Notwithstanding anything to the contrary contained herein, in no event will the amount due in "b" above be less than One Million One Hundred Thousand Dollars ($1,100,000).

Borrower acknowledges that Schedule "B" annexed hereto represents conditions of the Loan Commitment required by Lender and that this document would not be executed by Lender without Borrower's agreement thereto. Borrower further acknowledges that each and every delivery required under this Loan Commitment (including those required under Schedule "B") must be made directly to Lender or its designated legal counsel. Any deliveries made to any other person or entity (including without limitation any appraiser or broker involved with the proposed loan transaction) shall not be deemed a delivery to Lender as required hereunder.

This document is an arm's length and negotiated agreement. It shall be construed without any regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted.

Sincerely,

KENNEDY FUNDING FINANCIAL, LLC
BY:  _____
        Kevin Wolfer, President and CEO

DATE: _3-29-19_____

LOAN COMMITMENT ACCEPTED
THE ROSE CLUB COMPANY LTD.

BY: _____
        Rashna Cussen, President
        _____
Rashna Cussen, Individually and as Guarantor
DATE: _March 29/19_

th\com\Rose.Cussen.Executed



10

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

## SCHEDULE "A"

FINANCING REQUEST                                        $35,000,000

### PROPOSED LOAN AND USE OF PROCEEDS

MONTHLY PREPAID INTEREST                        UNKNOWN
(Refundable if unused)


CLOSING COSTS                                        UNKNOWN


BROKERAGE COMMISSION                            UNKNOWN


BALANCE OF COMMITMENT FEE                    $1,400,000*

*May be reduced pursuant to "COMMITMENT FEE MODIFICATION".

tn\com\Rose.Cussen.Executed

11

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

## SCHEDULE "B"

These General Conditions are part of the attached Loan Commitment and deemed a part hereof as if set forth therein.

1. **Survey:** Borrower shall provide an ALTA/ACSM land title survey or its equivalent in the Bahamas on the Collateral only incorporating such "Table A" items as Lender shall require. Said survey shall be certified and satisfactory to Lender, its attorney, and the title company.

2. **Insurance:** Borrower shall provide to Lender policies and certificates of insurance evidencing commercial general liability insurance and property insurance (and, if applicable, builder's risk insurance, construction general liability insurance, workers compensation insurance, excess/umbrella liability insurance, environmental liability insurance and hurricane/earthquake insurance) for the Collateral in such amounts and form, and issued by such companies, as reasonably approved by Lender, together with endorsements naming Lender, its successors and/or assigns as certificate holder, first mortgage, loss payee, and additional insured. Borrower shall provide Lender with evidence reasonably satisfactory to Lender that all such insurance will be prepaid from the Loan proceeds at closing for one (1) year from the closing date of the Loan.

3. **Title:** Lender shall receive a first lien on the Collateral acceptable to its Counsel and Borrower shall provide The Bahamian equivalent of an ALTA policy of full coverage title insurance in form satisfactory to Lender naming Lender, its successors and/or assigns as insured in an amount not less than the Loan amount.

4. **Flood Insurance:** N/A.

5. **Easements:** All necessary easements for utilities, public road access, parking or otherwise shall be provided for prior to closing.

6. **Leases/Tenants:** If applicable, Borrower shall furnish copies of all Leases related to the Collateral, together with such Tenant Estoppel Certificates, Assignment and Assumption of Leases, Subordination Non Disturbance and Attornment Agreements, and Certified Rent Rolls as may be required by Lender and Lender's attorney.

7. **Additional Collateral:** As additional Collateral Lender shall receive a pledge of 100% of the equity interests in Borrower. In addition, Borrower agrees to allow Lender to lien all inventory, machinery, equipment, accounts receivable and all other assets owned by Borrower.

tn\com\Rose.Cussen.Executed

12

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

8.  **Approval of Lender's Counsel:**  The title to the Collateral and the form and substance of each and every document evidencing the Loan and the security thereof or incident thereto, must be reasonably satisfactory to and approved by Counsel to Lender in its sole discretion.

9.  **Approval of Borrower's Counsel, Etc.:**  Borrower acknowledges that it has consulted with counsel of its choice and with such other experts and advisors as it deemed necessary in connection with the negotiation, execution, and delivery of this Loan Commitment and Borrower acknowledges that it will consult with Counsel of its choice and with such other experts and advisors as it deems necessary in connection with the negotiation, execution and delivery of the other Loan Documents.  This Loan Commitment and the other Loan Documents shall be construed without regard to any presumption or rule requiring that they be construed against the party causing them, or any part of them, to be drafted.

10. **Representations and Warranties of Borrower and Guarantor:**  Customary for transactions of this type, including, but not limited to, the following:

    (a)  Neither the Loan Documents nor the performance by Borrower or Guarantor(s) of its obligations thereunder violate any provisions of law, of Borrower's or Guarantor(s) partnership agreement, corporate by-laws, or of any agreement which is binding upon Borrower or Guarantor(s).  Other than as described herein, no action or permission by any governmental commission, bureau or agency is required in connection with the execution or the performance of the Loan Documents by Borrower or Guarantor(s).  Borrower and Guarantor(s) are not subject to filing, reporting or like requirements of any governmental commission. bureau or agency charged with control or supervision of environmental concern related to the Collateral.

    Borrower is required to procure project acceptance by BIA, and Borrower herein represents that it has so obtained said acceptance. Borrower is also under an obligation to produce an EIA no more than six (6) months old and accepteance of said EIA from the BEST Commission no later than thirty (30) days prior to Loan closing.

    Further, Lender must procure approval as Lender for this project from the appropriate authorities as determined by Lender's local counsel. On a previous Loan, Lender obtained approval from the BIA and/or the Bahamian Central Bank.

    (b)  All financial information furnished or disclosed to Lender by Borrower and Guarantors touching upon the financial condition of any of them is true and correct as of the date furnished, and there has been no omission of any material fact relating thereto, and there has been no material adverse change in the

tn\com\Rose.Cussen.Executed



13

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

financial condition, operations or business of any of them since the date of such financial information. Lender shall determine the amount of Monthly Prepaid Interest based on the income available as shown on the Borrower's and Guarantor's financial statement. Borrower and Guarantor(s) authorize Lender to obtain any credit information which Lender deems appropriate or necessary regarding Borrower and/or Guarantor(s). Borrower shall provide Lender with financial information as Lender deems appropriate, for Borrower, Guarantor(s), and all individuals and entities who own a Ten Percent (10%) or greater direct or indirect interest in Borrower or Guarantor(s). Borrower herein represents that no individual or entity owns Ten (10%) Percent or more of Borrower other than Rashna Cussen.

(c)    Borrower or Guarantor(s) are not in default in the performance, observance or fulfillment of any of the obligations or conditions contained in any agreement or instrument to which it is a party, or with respect to any evidence of indebtedness or obligation for borrowed money, except as otherwise disclosed in writing herein. Borrower represents that any such disclosures do not affect in any way the Collateral, nor does any condition exist which, upon the lapse of time or giving of notice, or both, would constitute an event of default under, or grounds for termination of, any such agreement or instrument.

(d)    With the exception of a potential dispute under the current purchase and sale agreement by and between Rose Island Beach and Harbour Club as Seller and the Borrower as Purchaser (action threatened as a result of closing delay only and resolved by future closing), no actions, suits or proceedings at law or in equity are pending or, to the best of Borrower's or Guarantor's knowledge, threatened, in any court or before any federal, state, municipal or governmental department, commission, board, bureau, agency or instrumentality against or affecting Borrower, Guarantors, or any of its properties or rights which, if adversely determined would materially adversely affect the financial condition of Borrower or Guarantors or materially impair the right of either to carry on its business substantially as now conducted. Borrower and Guarantor(s) have disclosed to Lender in writing all judgments, writs, injunctions, decrees, rules or regulations of any court or federal, state, municipal or governmental department, commission, board, bureau, agency or instrumentality.

(e)    At Lender's option, Borrower will establish and maintain reserves for ongoing expenses including, but not limited to, taxes and insurance premiums, and replacement reserves in amounts acceptable to Lender. The tax and insurance reserve will be funded up front from the Loan proceeds at closing, and will be 1/12th of the annual amount payable. All funds held in the reserve accounts will be held for the benefit of Borrower, except for the tax and insurance reserve (which shall be for the benefit of Lender).

tn\com\Rose.Cussen.Executed



14

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

11.    **Additional Requirements:** Prior to the closing of the Loan and disbursement of funds, in each instance Borrower must comply with the following:

(a)    Borrower is to produce such evidence as Lender may require to demonstrate current full compliance with all applicable building, zoning, health, environmental and safety laws, ordinances and regulations (including without limitation, certificates of occupancy and approvals of local, private or public sewage or water utilities). Borrower shall certify or supply other satisfactory evidence to Lender at the time of the closing that there is no action or proceeding pending before any court or administrative agency with respect to the validity of any laws, ordinances or regulations, and any certifications or permits issued thereunder, pertaining to the Collateral. Borrower shall provide Lender with searches prepared by Corporation Service Company or CT Corporation System, and in the case of a Bahamian company, a search by the appropriate Bahamaian search company covering liens, judgments and litigation with respect to Borrower, Guarantor, and all individuals and entities who own a Ten Percent (10%) or greater direct or indirect interest in Borrower or Guarantor, if any, in each County and State where Borrower does business and, in the County, and State where personal Guarantor resides. Borrower herein represents that with the exception of this Loan Commitment, that it is only conducting business in the Commonwealth of the Bahamas. Borrower shall certify or supply other evidence satisfactory to Lender that Borrower is not a party to any existing or pending or threatened litigation, unless specifically noted herein.

(b)    All appropriate approvals necessary for the current use and the completed project contemplated by this Loan Commitment (if applicable) must be provided and must meet all applicable requirements of all governmental authorities having jurisdiction, including, but not limited to subdivision and site plan approvals, the Department of Environmental Protection and its several sub departments as they pertain to potable water supply, sewage discharge and sewage connection, use of septic tanks or alternatives. Lender shall require prior to closing, evidence satisfactory to it and its Counsel of full compliance with all Environmental Clean-Up Responsibility Acts and that no action is pending or liens imposed under any Spill Compensation and/or Control Acts. Borrower shall provide Lender with a Phase I environmental report (dated not more than six (6) months prior to the closing date of the Loan) acceptable to Lender in its sole discretion as well as written proof of the BEST Commission's acceptance of said EIA, both the EIA and proof of its acceptance to be produced to Lender no later than thirty (30) days prior to the Loan closing. Borrower shall provide Lender with evidence satisfactory to Lender that Lender, its successors and or assigns are permitted to rely upon all environmental reports provided by Borrower to Lender. Borrower shall provide to Lender general liability insurance policies and certificates of insurance of the companies that issued each environmental report in such amounts and form, and issued by such companies, as approved by Lender,

tri\com\Rose.Cussen.Executed

15

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

together with an endorsement naming Lender, its successors and/or assigns as certificate holder and additional insured.

(c)    During the term of the Loan, there shall be no additional financing nor any transfer of title, not contemplated in the Loan Documents without the prior written approval of Lender.

(d)    Execution by Borrower of such Loan Documents including, but not limited to, a mortgage and mortgage note, satisfactory in form and substance to Lender and its counsel, and to Borrower and its counsel including a prohibition against the transfer of title of any of the Collateral not contemplated in the Loan Documents, and if Borrower is a corporation or partnership, a change in the management or controlling interest in Borrower.

(e)    This Loan Commitment is subject to the accuracy of all information, representations, exhibits and other materials submitted with or in support of the Loan request and there must be no adverse change in the set of facts prior to the disbursements of funds or during the term of the Loan. This Loan Commitment may be terminated by Lender and the Commitment Fee retained and earned by Lender in the event of the following:

(i)    If Borrower shall fail to comply with any of the terms or conditions hereof.

(ii)    In the event of a sale, conveyance or other market of any of the Collateral.

(iii)    In the event of a materially adverse change in the financial condition of Borrower or any Guarantor.

(iv)    Any fraudulent material misrepresentation or any omission or concealment by Borrower or any Guarantor of any material fact.

(f)    Absent Force Majeure, in the event of any default during the term of this Loan Commitment, Lender may, at its option, require immediate payment of the balance of the Commitment Fee and Lender may terminate the Loan Commitment and retain the paid portion of the Commitment Fee. For the purposes of this Loan Commitment, Force Majeure shall be defined as an Act of God, Riot, Strike or other condition or occurrence outside the control of Borrower, including Government Interference, and/or Government shutdown which materially impacts Borrower's ability to perform under this Loan Commitment. In the event of force majeure, Borrower's time to cure shall be extended for a reasonable time after the event of Force Majeure is over, however in no case said shall a reasonable time to cure shall be less than thirty (30) days from the cessation of the Force Majeure event.

tn\com\Rose.Cussen.Executed



16

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

(g)    Borrower has the obligation to disclose all material facts, past and present, related to Borrower, Guarantors, the Collateral, the transaction, etc.

(h)    Borrower specifically acknowledges and agrees that Lender relies on Counsel opinion letters relating to legal issues relating to the Loan including, but not limited to, the issue of usury. This Loan Commitment is subject to the express condition that at no time will Borrower be obligated or required to pay interest at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the maximum rate which Borrower is permitted by law to contract or agree to pay. If, by the terms of this Loan Commitment or the Loan Documents Borrower is at any time required or obligated to pay interest at a rate in excess of such maximum rate, the rate of interest shall be deemed to be immediately reduced to such maximum rate and the portion, if any, of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance.    All amounts due by Borrower in connection with the Loan shall be paid in U.S. dollars without regard to currency or exchange rate fluctuation or risk.

(i)    Borrower shall provide Lender with organizational, constituent and authority documents for Borrower, Guarantor (if any entity), and all individuals and entities who own a Ten Percent (10%) or greater direct or indirect interest in Borrower or Guarantor, if any including without limitation, certificates/articles of formation/incorporation/organization, certificates of authority to do business (if applicable), operating agreements/bylaw/partnership agreements, resolutions, incumbency certificates, and current good standing certificates, all in form and substance satisfactory to Lender.    Borrower shall provide Lender with an organizational chart for Borrower and Guarantor (if an entity) in form satisfactory to Lender that sets forth Borrower and Guarantor, and all individuals and entities that own direct or indirect interests in, or manage or control, Borrower or Guarantor together with their respective percentage interests therein. At Lender's option at closing, the owner of the Collateral and Borrower shall be a newly formed single-purpose Bahamian limited liability company or limited partnership acceptable to Lender.    Borrower's organizational documents shall contain provisions satisfactory to Lender, including without limitation, single purpose entity provisions (e.g. single asset, restrictions on certain entity changes and transactions, bankruptcy remoteness, entity separateness, subordination of certain owner rights, independent manager/director).    These provisions may not be amended in any material respect during the term of the Loan without Lender's consent.    The sole business activity of Borrower shall be the ownership and operation of the Collateral.    Borrower shall have no debt other than the Loan at closing.    Borrower shall be prohibited from incurring additional debt other than the Loan throughout the Loan term, including without limitation, partnership debt.    Any advances made to Borrower from any partner, member of Borrower or shareholder shall be in the form of equity not debt.

tn\conn\Rose.Cossen.Executed

17

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

(j)    If applicable, Borrower shall provide Lender with copies of all Broker agreements and invoices issued in connection with the Loan.

(k)    If applicable, Borrower shall provide Lender with copies of all management and service contracts affecting the Collateral, if any.

(l)    If applicable, Borrower shall provide Lender with evidence that Borrower's ready funds necessary to close are held in escrow with the settlement agent together with evidence of the source of such funds.

(m)    If applicable, Borrower shall provide Lender with the purchase and sale agreement and all amendments thereto and all conveyance/closing documents executed or delivered in connection with the transfer of the Collateral to Borrower.

(n)    If applicable, the transfer of the Collateral to Borrower shall be pursuant to an "arms-length transaction", which term shall mean a transaction evidenced by a binding agreement that contains market terms and conditions between separate, distinct, and unrelated parties.

(o)    If applicable, Borrower shall provide Lender with an inspection report covering all buildings on the Collateral in form and substance satisfactory to Lender issued by a structural engineer satisfactory to Lender together with an estimate of remediation costs issued by a company satisfactory to Lender with respect to any and all recommended remediation set forth in said inspection reports.

(p)    If there are leases or other income producing assets on the Collateral, Lender may require Borrower to establish and maintain a lockbox account (the "Lockbox Account") at a banking institution satisfactory to Lender.

(q)    Borrower shall provide Lender with evidence satisfactory to Lender of the availability of public utilities at the Collateral (water, sewer, electric, gas).

(r)    Borrower shall provide Lender with evidence satisfactory to Lender of all agreements, approvals, licenses and permits required for, or issued in connection with the development or operation of the Collateral.

(s)    In the case of a construction loan, Borrower shall provide Lender with a complete set of architect and engineering plans and all contracts, budgets, schedules and other construction documents, if any, together with a performance/completion bond insuring Lender that the project will be completed per approved plans.

[n]com\Rose.Cussen.Executed

18

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

12.    **Validity of Loan:** The Loan and the closing thereof shall in all respects be legal and not violate any applicable law or other requirements of any governmental authority. Borrower will submit to Lender at closing a current written opinion by Borrower's legal counsel, satisfactory to Lender, to the effect, among other things, that all Loan Documents are valid and binding upon Borrower and any other mortgagor and are enforceable in accordance with their terms and are legal and do not violate any local, state or federal laws including, but not limited to, all usury laws. Borrower's and Guarantor's legal Counsel providing such opinion shall be a law firm, satisfactory to Lender, comprised of four (4) or more attorneys, at least one of which specializes in the practice of commercial real estate. Once the Loan is closed and funded by Lender, all Loan documents, with the exception of the Guarantee and the Environmental Indemnity shall be governed, interpreted and construed under the Laws of The Commonwealth of The Bahamas; once the Loan is closed, the Guarantee and the Environmental Indemnity shall be governed, interpreted and construed pursuant to the laws of the State of New Jersey. Borrower understands that Lender has entered into this Commitment expecting to receive a return on the Loan as set forth in this Loan Commitment. In the event that the jurisdiction in which the Collateral is located and/or from which payment is made requires the payment of a tax, assessment, or other charges in connection with the Loan by Lender, Borrower will be responsible for the payment of such tax, assessment or charge and shall reimburse Lender for any payment required to be made by Lender.

13.    **Governing Law:** This Loan Commitment shall be governed by and construed in accordance with the internal substantive laws of the State of New Jersey, without regard to the choice of law principles of such state. The Loan Commitment is terminated upon closing. All Loan Documents, with the exception of the Guarantee and the Environmental Indemnity shall be governed, interpreted and construed under the Laws of the Commonwealth of The Bahamas with venue to lie solely in the Bahamas.

14.    **Usury:** It is expressly understood and acknowledged by Borrower that Lender may not be familiar with the usury statutes in the Collateral's jurisdiction and relies on Counsel Opinions delivered at closing. This Loan Commitment is subject to the express condition that at no time shall Borrower be obligated or required to pay interest at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the maximum rate which Borrower is permitted by law to contract or agree to pay. If by the terms of this Loan Commitment or the note Borrower is at any time required or obligated to pay interest at a rate in excess of such maximum rate, the rate of interest hereunder and/or under the note shall be deemed to be immediately reduced to such maximum rate and interest payable shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of principal balance or, if the Loan has not closed shall be void, and if Lender deems it a hardship to close the Loan under the usury statutes, all fees paid to Lender shall be refunded and this Loan Commitment shall be null and void.

tn\com\Rose.Cussen.Executed

19

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

15. **Choice of Forum:** For the purpose of this Loan Commitment only, Borrower and Guarantor(s) consent to the jurisdiction of any state or federal court sitting in the State of New Jersey for adjudication of any dispute between Borrower and Guarantor(s), their agents, servants and/or employees and Lender under any theory of law in connection with, out of, or otherwise relating to this Loan Commitment and any related transactions and that venue shall be proper in any such court to the exclusion of the courts in any other state or country. Borrower further agrees that such designated forum is proper and convenient. Upon closing, for the purposes of all Final Loan documents other than the future Guarantee and the future Environmental Indemnity, Jurisdiction shall lie solely in the Commonwealth of the Bahamas and venue shall lie in Nassau, Bahamas only.

16. **WAIVER OF TRIAL BY JURY:** Borrower and Lender each hereby unconditionally and irrevocably waive any and all right to trial by jury in any suit, counterclaim, or cross-claim arising in connection with, out of, or otherwise relating to this Loan Commitment, the Loan, the Loan Documents, the Collateral, or anything related to this transaction.

17. **No Oral Modifications:** Notwithstanding any course of dealing between the parties, no amendment, modification, rescission, waiver, or release of any provision of this Loan Commitment shall be effective unless the same shall be in writing and signed by Borrower and Lender.

18. **Complete Agreement:** This Loan Commitment, together with the other Loan Documents, constitutes the entire agreement and understanding among the parties relating to the subject matter of this Mortgage Loan, and supersedes all prior proposals, negotiations, agreements, and understanding relating to such subject matter. In entering into this agreement, Borrower acknowledges that it is relying on no statement, representation or agent of Lender, except for the agreements of Lender set forth herein.

19. **Survival of Commitment:** Borrower and Lender hereby acknowledge and agree that this Loan Commitment shall not survive closing. Furthermore, notwithstanding the provisions of paragraph 17 above, the parties specifically acknowledge and agree that the terms and conditions of this Loan may be modified by mutual agreement at any time up to and including the date of closing and that any such modifications shall be incorporated directly into the Loan Documents without the need to amend this Loan Commitment.

20. **Execution.** This Loan Commitment may be executed in any number of counterparts, each in which shall be considered an original. Delivery of an executed copy by one party to the other, via facsimile or email shall constitute a valid delivery.

The undersigned does hereby accept this Loan Commitment and does hereby agree to keep and perform each and every item and condition herein before set forth and does acknowledge that the performance of such terms and conditions are obligations of the undersigned. The undersigned acknowledges and agrees that Lender requires satisfaction of the conditions herein (and in the Loan Documents) at least three (3)

tn\com\Rose.Cussen.Executed

20

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

business days prior to the closing and funding of the Loan. The attorney for Borrower has reviewed this Loan Commitment and has explained all of its terms and ramifications to Borrower and Guarantor.

**ACCEPTED:**
THE ROSE CLUB COMPANY LTD.

BY: _____
    Rashna Gussen, President

_____
Rashida Cussen, Individually and as Guarantor

DATE: March 29/19

tn\com\Rose Cussen.Executed

21

The Rose Club Company Ltd.
Loan Commitment
March 29, 2019

### SCHEDULE "C"
#### (COLLATERAL / PROJECT DESCRIPTION)
#### PROVIDED BY BORROWER

Approximately 230 acres +/- acres of property located on the Western End of Rose Island, Bahamas.

Legal and drawing attached.



tn\com\Rose.Cussen.Executed



VOL010057 PG0624

VOL. 9990 PAGE 963

RC Rose Island Hotel Company Limited
Description of 230 acres situate Rose Island, Bahamas

1.    ALL THAT piece parcel or lot of land containing approximately Two Hundred (200) acres situate on the Western portion of the Island of Rose Island one of the Islands of the Commonwealth of The Bahamas.

2.    ALL THAT piece parcel or lot of land containing approximately Ten and Eight Hundredths (10.08) acres more or less situate on the Island of Rose Island one of the Islands of the Commonwealth of The Bahamas.

3.    ALL THAT piece parcel or lot of land containing Five and Sixty-one Hundredths (5.61) acres more or less situate on the Island of Rose Island one of the Islands of the Commonwealth of The Bahamas.

4.    ALL THAT piece parcel or lot of land containing approximately Four and Six Hundred and Fifty-five Thousandth (4.655) acres formerly a portion of a subdivision known as "Nassau Isles Estates" situate approximately 6 miles northeasterly of Nassau and approximately 3,300 feet East of the Western tip of Rose Island one of the Islands of the Commonwealth of the Bahamas.

5.    ALL THAT piece parcel or lot of land containing approximately Five (5) acres situate on the Western portion of the Island of Rose Island one of the Islands of the Commonwealth of The Bahamas.

6.    ALL THAT piece parcel or lot of land containing approximately Five (5) acres situate on the Western portion of the Island of Rose Island one of the Islands of the Commonwealth of The Bahamas.

RONALD W. THOMPSON
SECRETARY
INVESTMENTS BOARD

8th February 2007
DATE

VOL. 9 9 9·0 PAGE . 9 3 2

VOL 0 1 0 0 5 7 PG 0 6 4 3·

### THE SCHEDULE HEREINBEFORE REFERED TO

### PROPERTY ONE (1)

ALL THOSE pieces, parcels or tracts of land comprising approximately 34.938 acres situate on the Western End of Rose Island, which said Island lies in the vicinity of and Northeastwardly from the Eastern End of the Island of New Providence, which said pieces, parcels or tracts of land are designated as PARCEL 1 through PARCEL 7, inclusive, on the plan by Donald E. Thompson & Associates dated 12th November, 2005 attached hereto.

### PROPERTY TWO (2)

ALL THOSE parcels, lots or strip of land and waterways being part of Rose Island Beach and Harbour Club situate on the Western End of Rose Island, which said Island lies in the vicinity of and Northeastwardly from the Eastern End of the Island of New Providence, which said parcels, lots or strip of land and waterways have such positions, boundaries, shape, marks and dimensions as are shown on the plans by Donald E. Thompson & Associates of Rose Island Beach and Harbour Club filed in the Department of Lands and Surveys as Number 3524 N.P. and 3525 N.P. (hereinafter referred to as the "Plans") and are more particularly described as follows:-

| | |
|---|---|
| PARCEL A. | ALL THAT parcel of land designated as the Commercial Area; |
| PARCEL B. | ALL THAT parcel of land designated as the Hotel Site; |
| PARCEL C. | ALL THAT parcel of land designated as the Utilities Site; |
| PARCEL D. | ALL THAT strip of land adjoining the Western boundary of the said Hotel Site and the said Utilities Site; |
| PARCEL E. | ALL THOSE parcels of land designated as Waterways (including any entrances to Rose Island Beach and Harbour Club from the Sea); and |

19 VOL. 9999 PAGE. 983

VOL 010057 PG0644

PARCEL F,    ALL THOSE lots of land being Units of Rose Island Beach and Harbour Club as set out below.

1.    UNIT NUMBERS THIRTY-SIX (36) TO SIXTY (60) INCLUSIVE

2.    UNIT NUMBERS SIXTY-TWO (62) TO NINETY-EIGHT (98) INCLUSIVE

3.    UNIT NUMBERS ONE HUNDRED (100) TO ONE HUNDRED AND FOUR (104) INCLUSIVE

4.    UNIT NUMBERS ONE HUNDRED AND NINE (109) TO ONE HUNDRED AND FOURTEEN (114) INCLUSIVE

5.    UNIT NUMBERS ONE HUNDRED AND FORTY-TWO (142) TO ONE HUNDRED AND SIXTY-FIVE (165) INCLUSIVE

IN WITNESS WHEREOF the Borrower has caused its Common Seal to be affixed hereto the day and year first hereinbefore written.

The Common Seal of RC ROSE ISLAND HOTEL COMPANY LIMITED was affixed hereto by Karim Alibhai, a Director of the said Company, and the said Karim Alibhai affixed his signature hereto in the presence of Valentine S. Grimes, the Assistant Secretary of the said Company:

Additional Collateral:

Unit Lots 134, 135, 137, Lot A and the Lot titled "Park Lot"